IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VERONICA GRAVES,           )
                           )
            Plaintiff,     )
                           )
      v.                   )        1:13cv663
                           )
BANK OF AMERICA, N.A.,     )
                           )
            Defendant.     )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

In this employment action, Plaintiff Veronica Graves alleges discrimination and retaliation in violation of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 et seq. Before the court is Defendant's motion for summary judgment. (Doc. 25.) The motion is fully briefed and ready for decision. For the reasons set forth below, the motion will be granted and the case dismissed.

## I.   BACKGROUND

The undisputed facts, viewed in the light most favorable to Graves, as the non-moving party, are as follows:[1]

_____

[1] Throughout her briefing, Graves frequently fails to provide citation to any evidence in the record for key assertions. (See e.g. Doc. 28 at 2, 3, 5, 6, 8.) This practice violates Local Rule 7.2(a)(2) (providing that "[e]ach statement of fact should be supported by reference to a part of the official record") and renders her position subject to rejection on this basis alone. The court need not, and will not, scour the record for support for a party's position. See

Graves began working for Bank of America in 2007 as a customer service and sales specialist at a Greensboro call center. (Doc. 26-1 at 4.) There, she responded to telephone calls, emails, and text messages from Bank of America customers. (Id. at 6.)

In 2009, Graves began seeking medical attention for stress, anxiety, and depression and was prescribed medication. (Doc. 28-1 at 12, 15, 19.) She was placed on medical leave in the spring of 2011 and returned to work in May 2011, at which time she requested a reduction in her work schedule from eight hours a day to four-to-six hours a day, per her doctor's orders. (Doc. 26-1 at 41, 43, 49; Doc. 28-3 at 2.) Although the bank inquired about the nature of her medical condition, Graves refused to provide that information.[2] (Doc. 26-1 at 41–42.) Bank of America nevertheless approved her request in June 2011. (Id. at 41, 43.) At some unspecified point thereafter during the summer of 2011, Graves was asked to participate in a "shift bid" that involved an eight-hour schedule, but she gave the scheduler "a chance to work on getting the schedule accommodated," which was resolved sometime in August 2011. (Id.

Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014).

[2] Graves does believe that two coworkers – Juwanna Jessup and Kristen McKellar – knew that she had experienced stress, anxiety, and depression. (Doc. 28-1 at 15.)

at 42–45.)  Graves remained on an abbreviated schedule, as she requested, from August 2011 until her doctor released her to return to work full-time in January 2012.  (Id. at 43, 44.)

Following her return to work full-time, Graves filed several charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Her first charge was filed on February 13, 2012, although its basis is not in the record.[3] (Id. at 57–58; Doc. 6 ¶ 6.)  Unable to find a violation, the EEOC issued its right to sue letter on March 26, 2012.  (Doc. 28-1 at 3.)  Sometime in March 2012, Graves took another leave of absence and returned to work in around April 2012.  (Doc. 28-3 at 2.)  She filed another charge on May 29, 2012, alleging disability discrimination and retaliation in violation of the ADA.  (Id. at 2.)  This charge included her alleged failure to be accommodated from "[o]n or around the month of May 2011 . . . until the month of August 2011."  (Id.)  On November 30, 2012, the EEOC responded that it could not establish any violation but provided Graves with a notice of her right to sue.  (Id. at 4.) According to Graves, only one Bank of America employee – Ebony Norway, as to which there is no evidence she was a decisionmaker – told her that they knew about her EEOC charges, but the EEOC had told Graves that her managers would learn of the charges.

---

[3] Graves testified at her deposition that she filed an EEOC charge in February 2012 but has not provided a copy or any explanation of its basis.  (Doc. 26-1 at 57–58.)  The bank admits that she filed the charge on February 13, 2012.  (Doc. 6 ¶ 6.)

(Doc. 26-1 at 53–54.)

In November 2012, Graves' immediate supervisor — Tomekia Friday — notified Bank of America's Fraud Investigations Group ("Fraud Investigations") that she observed suspicious computer system screen-prints sent from Graves' work email account. (Doc. 26-2 ¶¶ 2-4.) In her position as a customer service associate, Graves had access to the bank's confidential customer information, including account numbers, telephone numbers, and addresses. (Doc. 26-1 at 6-8.) Bank of America's Code of Ethics Policy, of which Graves was aware and on which she had been trained, directed employees not to "access customer information or use customer information except for appropriate business purposes." (Id. at 15-16, 74.)

Based on Friday's alert, Bank of America's Cyber Forensics Department reviewed email sent from Graves' work account. (Doc. 26-2 ¶ 5.) The Cyber Forensics Department discovered that "[a] number of emails that Ms. Graves forwarded to her personal email account contained customer sensitive information, including customer names, account numbers, and addresses." (Id.) On December 6, 2012, Patrick Williams, an investigator with Fraud Investigations, met with Graves and informed her of the results of the Cyber Forensics Department's review. (Doc. 26-1 at 19, 25-26; Id. ¶ 7.) Graves admitted to forwarding confidential

customer information from her work email account to her personal email account. (Doc. 26-1 at 21; Doc. 26-2 ¶ 8.)[4]

Given Graves' admission, Williams instructed her to delete all emails containing customer information and any hard copies of those emails. (Doc. 26-2 ¶ 10.) In accordance with the bank's procedures, Williams also asked that Graves provide a written statement of her actions and execute an affidavit confirming deletion of the forwarded emails. (Doc. 26-1 at 83–84; Doc. 26-2 ¶ 11.) The bank's Code of Ethics Policy required employees "to cooperate with all internal investigations into violations of Bank of America's Code of Ethics Policy." (Doc. 26-1 at 14, 73.) Graves responded that she would delete all emails and hard copies. (Id. at 25–27; Doc. 26-2 ¶ 12.) She refused, however, to sign the affidavit. (Doc. 26-1 at 27.)

On December 12, 2012, Williams followed up with Graves, requesting that she sign the affidavit. (Id. at 28–29, 87.) He informed her that mere verbal confirmation that she had deleted all the emails and hard copies was insufficient and that she had until December 17, 2012, to sign the affidavit. (Id. at 29–30, 86–87.) Again, Graves refused to sign the affidavit. (Id. at 29, 86.) Williams followed up with Graves on December 18, 2012. (Id. at 30, 85.) Yet again, Graves refused to sign. (Id.)

---

[4] Graves argues that she sent the emails in order to "protect herself from undue harassment by her supervisor" and claims that her supervisor knew of the activity, but her record citation (where provided) does not support this claim. (Doc. 28 at 2.)

After this third refusal, Williams spoke with Human Resources Advisor Ashley Oates. (Doc. 26-2 ¶ 16; Doc. 26-3 ¶ 6.) Williams informed Oates of the situation, and Oates requested that Williams contact Graves again. (Doc. 26-2 ¶ 17; Doc. 26-3 ¶ 7.) Consistent with Oates' request, Williams asked Graves to sign the affidavit and informed her that failure to do so could result in her termination. (Doc. 26-1 at 31-33; Doc. 26-2 ¶ 18.) This accords with Bank of America's Code of Ethics Policy that states that a violation is grounds for termination. (Doc. 26-1 at 14-15, 69.) With both Charles Bridges (supervisor to Friday, Graves' immediate supervisor) and Williams present, Graves refused to sign the affidavit. (Id. at 31-33; Doc. 26-2 ¶ 18-19.)

On January 3, 2013, Williams, Oates, and Bridges met regarding Graves. (Doc. 26-2 ¶ 20; Doc. 26-3 ¶ 8.) Williams told Oates and Bridges that Graves refused to execute the affidavit. (Id.) Based on this information, Oates recommended that Graves be terminated. (Doc. 26-3 ¶ 9.) That same day, Bridges met with Graves and advised her that her employment was terminated for a violation of the bank's Code of Ethics. (Doc. 26-1 at 17-19; Doc. 26-3 ¶ 10.)

After her termination, Graves filed a third EEOC charge on

February 26, 2013.[5]  (Doc. 28-3 at 5–6.)  In it, she claimed that she was terminated as a result of disability discrimination and retaliation.  (Id. at 5.)  As recently as February 2014, Graves continued to possess hard copies of emails containing confidential Bank of America customer information.  (Doc. 26-1 at 36–37.)

On July 23, 2013, Graves filed the present complaint alleging disability discrimination and retaliation under the ADA as well as violations of North Carolina public policy.[6]  Graves alleges that Bank of America discriminated against her because of her disability by wrongfully discharging her and by denying reasonable accommodation of her work schedule.  (Compl. ¶ 12.)  She further alleges that Bank of America retaliated against her for filing charges with the EEOC.  (Id. ¶¶ 13, 17.)  Finally, she claims the bank's actions violated North Carolina's public policy against disability discrimination and retaliation.  (Id. ¶ 19.)[7]

---

[5] In her testimony, Graves claims she also filed a fourth EEOC charge prior to February 2012.  (Doc. 26-1 at 57–58.)  No evidence of this charge appears in the record, however.

[6] Graves' complaint also states a separate "claim" for punitive damages.  (Compl. ¶¶ 22–24.)  A request for punitive damages is of course not a claim, but because Graves fails to raise a genuine dispute of material fact as to any of her claims, the request is moot.

[7] Graves' complaint makes passing reference to a hostile work environment.  (Doc. 3 ¶¶ 6–7 ("hostile work environment"), 15 ("hostile treatment"), 20–21 ("hostile atmosphere" and "hostile environment").)  However, the complaint only states claims for

After discovery, Bank of America filed the present motion for summary judgment. (Docs. 25.) With Graves' response (Docs. 28) and Bank of America's reply (Doc. 29), the motion is ready for consideration.

## II. ANALYSIS

### A. Standard of Review

A court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine dispute of material fact remains. Where, as here, the non-moving party has the burden of proof, the moving party is entitled to summary judgment if it demonstrates the absence of material disputed facts. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 325 (1986). For the purposes of this motion, the court regards Graves' statements as true and draws all inferences in her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). But, she must establish

---

disability discrimination and retaliation under the ADA. The parties have not addressed, nor does the court construe the complaint as raising, a hostile work environment claim under Title VII, much less a plausible one. <u>See</u> <u>Coleman v. Md. Court of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010) (complaint must state a plausible claim for relief that permits the court to infer more than the mere possibility of misconduct); <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary" in a complaint, but the complaint must at least "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

more than the "mere existence of a scintilla of evidence" to support her position.  Id. at 252.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50.  Ultimately, summary judgment is appropriate where the non-movant fails to offer evidence on which the factfinder could reasonably find for her.  Id. at 252.

## B.   ADA: Discrimination Claim

Graves alleges that Bank of America failed to accommodate her disability and wrongfully terminated her because of it. (Doc. 3 ¶ 12.)  Each claim is addressed below.

### 1.   Wrongful discharge

The ADA prohibits an employer from terminating a qualified employee because of her disability.  42 U.S.C. § 12112(a).  To survive a motion for summary judgment, the employee must produce evidence sufficient for a factfinder to conclude that (1) she "was a qualified individual with a disability"; (2) she "was discharged"; (3) she "was fulfilling [her] employer's legitimate expectations at the time of discharge"; and (4) "the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination."  Reynolds v. Am. Nat'l. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quoting Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)). Failure to support any element will doom a claim on summary judgment.  Id.  Here, even assuming (without deciding) that

Graves was disabled, she has failed to produce evidence that she was meeting Bank of America's legitimate expectations or that the circumstances allow for a reasonable inference of discrimination.

Bank of America's Code of Ethics Policy prohibited employees from "access[ing] customer information or us[ing] customer information except for appropriate business purposes." (Doc. 26-1 at 74.) Graves was aware of this policy and acknowledges that it prohibited her from sending emails containing confidential customer information from her work email account to her personal email account. (Id. at 14–15, 18–19, 38.) She also admits that she violated the policy. (Id. at 21; Doc. 26-2 ¶ 8.)

As to the former, Bank of America's Code of Ethics Policy warns that a violation could lead to termination, and Graves was aware of this. (Doc. 26-1 at 14–15, 32–33.) When she was terminated, Graves was advised and understood that it was because she had violated the policy. (Id. 17–19, 45–46 (acknowledging "they terminated me on the basis of the Code of Ethics").) Thus, her sending of the emails to her personal account was a sufficient basis for termination under the policy.

Graves contends now that she was saving the emails "to protect herself from undue harassment by her supervisor." (Doc. 28 at 2.) This assertion is not only unsupported by the present

record but, even if true, would not undermine the bank's ability to expect compliance with the policy. Graves has not shown that Bank of America's policy is not legitimate. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006) (concluding that plaintiff failed to show that his employer's expectations "were somehow not 'legitimate'"). That Graves may have harbored ulterior motives is not important. Rather, "[i]t is the perception of the decision maker which is relevant." Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980).

Further, Graves argues that it was reasonable for her to refuse to sign the bank's affidavit because of its text. (Doc. 28 at 3.) This argument fails, too. Factually, Graves cites only to the draft affidavit itself, and not to any testimony, to support the claim.[8] (See id.) Moreover, her argument misses the point. The undisputed facts show that the bank's Code of Ethics Policy warned that her violation was grounds for dismissal. As noted, her conduct constituted a violation. The bank also warned that it expected Graves to cooperate in the investigation and sign the affidavit that confirmed destruction of the emails. (See Doc. 26-1 at 14, 73.) In either event, by violating the policy and failing to cooperate, Graves failed to meet her employer's legitimate expectations. Consequently, Graves'

---

[8] Graves does attach copies of some emails in which she objects to signing the affidavit, which the court has reviewed.

11

failure to establish that she was performing her job at a satisfactory level dooms her prima facie case of discrimination under the ADA. See Jones v. Dole Food Co., 827 F. Supp. 2d 532, 547 (W.D.N.C. 2011) ("When an employee is aware of an employer's policy and violates it, he has not met the employer's legitimate expectations.").

Graves also fails to provide circumstances that would support a reasonable inference of disability discrimination in her discharge. Bank of America's last accommodation of her claimed disability – Graves' leave of absence from March to April 2012 – was resolved some eight months before her termination. (Doc. 28-3 at 2.) Graves testified in her deposition that even she does not believe that the bank terminated her because of her disability. (Doc. 26-1 at 46 ("I don't believe that.").)[9] And, even if she could establish such circumstances, she cannot demonstrate that the bank's proffered reason – Graves' violation of the Code of Ethics policy – was pretextual. See Ennis v. Nat'l Ass'n of Business & Edu. Radio,

---

[9] Graves testified:

> Q:   So what is the basis for your belief that Bank of America terminated you on January 3, 2013, because of your disability?
> A:   What is the basis that I – I don't believe that.
> Q:   So what do you believe?
> A:   As far as what? That they terminated me on the basis of the Code of Ethics.

(Id.) She also testified, "I'm not saying that they treated me different because of a disability. I don't know if they knew anything about that." (Id. at 50.)

<u>Inc.</u>, 53 F.3d 55, 58 (4th Cir. 1995). Thus, whether viewed as a failure to meet her prima facie case, or under the burden shifting approach, Graves has failed to elicit sufficient evidence to raise a reasonable inference of unlawful discrimination.

Therefore, Bank of America's motion for summary judgment as to Graves' claim of wrongful discharge under the ADA will be granted.

### 2. Failure to accommodate

The ADA also obligates employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A) (defining the phrase "discrimination against a qualified individual on the basis of disability" under 42 U.S.C. § 12112(a)). Here, Graves claims that Bank of America refused to reasonably accommodate her need for a reduced work schedule in May 2011. (Compl. ¶ 12; Doc. 26-1 at 41; Doc. 28-3 at 2.) Bank of America contends the claim is time-barred and fails on the merits. Graves does not respond directly to either argument.

An employee alleging a claim under the ADA must file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1); <u>see also</u> <u>J.S. ex rel.</u>

13

<u>Duck v. Isle of Wight Cnty. Sch. Bd.</u>, 402 F.3d 468, 475 n.12 (4th Cir. 2005). Graves claims that Bank of America denied her reasonable accommodation beginning in May 2011, but she testified that the bank agreed to accommodate her in June 2011 and then asked her to participate in a "shift bid" involving eight-hour shifts sometime between June 2011 and August 2011. (Compl. ¶ 12; Doc. 26-1 at 41, 43–45.) She does not complain of any failure to accommodate thereafter.

Graves' earliest EEOC charge was filed on February 13, 2012, although the record fails to reflect its basis. (Doc. 26-1 at 57–58; Doc. 6 ¶ 6.) While Graves filed a later charge on May 29, 2012, alleging disability discrimination and failure to accommodate (Doc. 28-3 at 2), neither charge was timely as to the alleged May 2011 denial, even if the earlier charge is assumed to have properly raised a failure to accommodate claim. Thus, that claim is time-barred.

As to the alleged denial of reasonable accommodation that allegedly occurred as a result of the "shift bid" request, the record fails to reflect any dates other than the request was made sometime between June 2011 and until August 2011. Therefore, it is difficult to determine whether her EEOC charges were timely based on that occurrence, assuming again that her earlier charge properly raised a failure to accommodate claim. See <u>Johnson v. Glickman</u>, 155 F. Supp. 2d 1240, 1246 (D. Kan.

2001) ("[D]efendant bears the burden to show that plaintiff failed to timely comply with administrative prerequisites."); but cf. Darden v. Cardinal Travel Ctr., 493 F. Supp. 2d 773, 776 (W.D. Va. 2007) ("Although the Fourth Circuit has not ruled on which party holds the burden of establishing the timeliness of Title VII cases, . . . I find that the plaintiff bears the burden of establishing the timeliness of the filing of her complaint where it is contested by the defendant."). However, the May 2012 charge's statement that the failure to accommodate occurred "until the month of August 2011" suggests strongly that the claim is time-barred. (Doc. 28-3 at 2.)

In any event, a plaintiff must file a claim within ninety days of receiving her right to sue letter. 42 U.S.C. § 2000e-5(f)(1); see also Davis v. Va. Commonwealth Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999) ("Upon [EEOC] notification, i.e. a right to sue letter, the aggrieved party has 90 days to file suit."). In this case, the evidence, viewed most favorably to Graves, is that she received her right to sue letters pertaining to her failure to accommodate claim on March 26, 2012, and November 30, 2012.[10] (Doc. 28-3 at 3-4.) She filed this lawsuit on July 23,

---

[10] Graves' February 2013 charge (Doc. 28-3 at 5), which was timely filed within ninety days of her termination, alleges no failure to accommodate by Bank of America. See Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be

2013.  (Doc. 1.)  Thus, under either scenario, her failure to accommodate claims are time-barred.

Even if the claims were somehow timely, however, Graves has failed to establish a prima facie case for failure to accommodate under the ADA.  To avoid summary judgment, a plaintiff must point to evidence sufficient for a factfinder to determine that (1) she was an individual with a disability within the meaning of the statute; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) her employer refused to make such accommodations.  Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).  Here, the record simply fails to support Graves' claim that Bank of America failed to accommodate her requests.[11]

Graves concedes that the bank granted her requests for a leave of absence and for a reduced work schedule.  (Doc. 26-1 at 42-45, 49.)  In her brief to this court, she describes the temporary work restrictions implemented as "quite workable." (Doc. 28 at 4.)  The only wrinkles seem to be that it took the

procedurally barred.").  That charge, therefore, does not preserve her failure to accommodate claim.

[11] It appears doubtful that Bank of America had notice of Graves' disability.  Graves herself states: "I'm not saying that they treated me different because of a disability.  I don't know if they knew anything about that."  (Doc. 26-1 at 50.)  She also declined to provide Bank of America with the medical reason for her requested reduced work schedule.  (Id. at 41-42.)

16

bank approximately a couple of weeks to decide whether to grant the request and that thereafter (sometime during the summer of 2011) she was asked to participate in a "shift bid" for a full schedule. But these facts do not save her claim.

Graves concedes that she had refused to tell Bank of America the nature of her claimed illness upon which she predicated her request. (Id. at 41-42 ("They wanted to know what my illness was. And I wasn't willing to give them that information.").) She was obligated, however, to inform the bank of her disability so it could assess whether and how to accommodate it. See Schneider v. Giant of Md., LLC, 389 F. App'x 263, 270 (4th Cir. 2010) (citing EEOC v. Fed. Express Corp., 513 F.3d 360, 369 (4th Cir. 2008)) (observing that the employee must "inform the employer of *both* the disability and the employee's need for accommodations for that disability.").[12] As to the request to participate in the shift bid, Graves herself testified that she gave her scheduler "a chance to work on getting the schedule accommodated," which was resolved in August 2011. (Doc. 26-1 at 42-45.) Thereafter, Graves was placed on the shorter hourly schedule she desired until her

_____

[12] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

doctor cleared her for full-time duty in January 2012. (Id. at 44-45.) Graves has not demonstrated why the bank's request for information and any *de minimis* delay was unreasonable under the circumstances. Therefore, Graves has failed to meet her burden of showing that Bank of America failed to provide her with reasonable accommodation, and the bank's motion for summary judgment on this claim will be granted.[13]

### C. ADA: Retaliation Claim

Graves also alleges that Bank of America terminated her in retaliation for filing a charge of discrimination with the EEOC on May 29, 2012. (Compl. ¶ 12.)

Under the ADA, an employer may not terminate an employee for making a charge of discrimination. 42 U.S.C. § 12203(a). To avoid a motion for summary judgment on her ADA retaliation claim, Graves must point to facts indicating that "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). The filing of an EEOC charge is an activity protected under the ADA. 42 U.S.C. § 12203(a). If Graves can establish a prima facie case and Bank of America offers a legitimate non-

---

[13] In light of the court's conclusion, Graves' argument that even if she were not disabled she was perceived to be (Doc. 28 at 4-5) need not be addressed.

discriminatory reason for her termination, Graves bears the burden of providing evidence that the bank's stated reason is pretext for a discriminatory one. <u>King v. Rumsfeld</u>, 328 F.3d 145, 151 (4th Cir. 2003). Under this standard, Graves' claim for retaliation fails.

As to the prima facie case, Graves fails to provide sufficient evidence from which a factfinder could find the requisite causal connection. Employer knowledge of an EEOC charge is "absolutely necessary" for a finding of retaliation. <u>See</u> <u>Dowe v. Total Action Against Poverty</u>, 145 F.3d 653, 657 (4th Cir. 1998). Graves' evidence on this score is marginal. (Doc. 26-1 at 53-54 (relying on Graves' statement that the EEOC explained that the employer would be informed of the charge and on her testimony that Bridges and Friday told her, "Nobody's harassing you, so you can stop saying that").)[14] Even further, the passage of more than seven months between Graves' filing of her EEOC charge on May 29, 2012, and her termination in January 2013, is simply too long to support a finding of retaliation. <u>See</u> <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); <u>Jones</u>, 827 F. Supp. 2d at 554 ("[C]omplaints of

---

[14] While Graves' deposition suggests that Bridges and Friday at least knew that she had complained of harassment (Doc. 26-1 at 54), there is no evidence that they knew of her EEOC charge.

retaliation are considered stale after only a few months."). As a result, Graves fails to meet her prima facie case.

Moreover, as noted earlier, Bank of America has provided a legitimate non-discriminatory reason for her termination – the violation of the bank's Code of Ethics Policy – and Graves has not provided any evidence this was pretextual. It is not this court's province to second-guess this decision absent evidence of pretext. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 217–18 (4th Cir. 2007). Therefore, Bank of America's motion for summary judgment on this claim will be granted as well.

**D.  State Law Claims**

With facts identical to her federal claims, Graves pleads state law claims based on an alleged violation of North Carolina's public policies against disability discrimination and retaliation. North Carolina law prohibits "discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Stat. Gen. § 143–422.2. When considering state law discrimination and retaliation claims, North Carolina "look[s] to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." N.C. Dep't of Correction v. Gibson, 301 S.E.2d 78, 82 (N.C. 1983); see also Williams v. Avnet, Inc., 910 F. Supp. 1124, 1137 (E.D.N.C. 1995) (applying

20

Gibson to a state law disability claim). Moreover, no retaliatory discharge claim exists under North Carolina public policy. See Stout v. Kimberly Clark Corp., 201 F. Supp. 2d 593, 607 (M.D.N.C. 2002) (holding that no "North Carolina court decision . . . has ruled that a discharge as retaliation for an employee's protest of the employer's discriminatory activities violates the state's public policy"). Because no genuine issue of material fact exists regarding Graves' federal disability discrimination and retaliation claims, therefore, her state law claims similarly fail.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Bank of America's motion for summary judgment (Doc. 25) be GRANTED.


                                    /s/   Thomas D. Schroeder
                                    United States District Judge

September 22, 2014